UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE HARRIS, | ) | Case No. 1:10CV1313 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| KEITH SMITH, | ) | AND ORDER |
| Defendant. | ) | Magistrate Judge McHargh |

The parties have consented to the jurisdiction of this Magistrate Judge. Presently before the Court is Defendant Keith Smith's Motion to Dismiss Plaintiff Dwayne Harris' Complaint. (Doc. 17). Plaintiff filed his Response in Opposition to Defendant's Motion on April 29, 2011. (Doc. 34). Defendant timely filed its Reply on May, 2, 2011. (Doc. 35). Plaintiff then filed an Amended Opposition to Defendant's Motion on May 4, 2011. (Doc. 36). Based upon the parties' filings and the applicable law, Defendant's Motion is hereby GRANTED.

I. FACTUAL & PROCEDURAL BACKGROUND

On June 15, 2010 *pro se* Plaintiff Dwayne Harris brought this action pursuant to 42 U.S.C. §1983 against Mansfield Correctional Institution ("MANCI"), Warden Keith Smith, Ohio Department of Rehabilitation and Correction ("ODRC") Director Ernie Moore, Ohio Adult Parole Authority ("OAPA") Deputy Director Harry E. Hageman, and OAPA Chief Cynthia Mausser. Mr. Harris alleges Ohio prisons,

including MANCI, are overcrowded and unsanitary due to lengthy sentences being served by inmates convicted prior to the enactment of Ohio Senate Bill 2 ("S.B. 2"). He has requested a jury trial and seeks declaratory, injunctive, and monetary relief.

Specifically, Mr. Harris states that inmates at MANCI are forced to sleep on mattresses that are in "bad condition." (Compl. at 5). He alleges that showers must be shared by approximately 120 inmates and leak sewage from the shower vents. Moreover, he contends that the showers are covered with black mold and the water temperature of the showers fluctuates between scalding and extremely cold. He indicates that on holidays and weekends inmates are only served brunch, rather than breakfast and lunch, resulting in the elimination of one meal. Furthermore, Mr. Harris alleges that there is a heightened level of tension and violence among inmates which has led to increased accounts of gang related and staff member assaults on inmates. He complains that inmates have been denied rehabilitation programs. Additionally, he contends that there is no ventilation in the multipurpose rooms which are shared by approximately 120 inmates.

Mr. Harris states that the overcrowding of Ohio prisons is a result of the OAPA decision to deny parole to inmates serving indefinite sentences. (Compl. at 5). He suggests that the amount of time served by inmates sentenced prior to the enactment of S.B. 2 is disproportionate to the amount of time served by those receiving sentences of definite terms for the same crimes post-enactment. *Id.* Thus, he claims, Defendants violated his Eighth Amendment rights. *Id.*

However, on August 10, 2010, District Court Judge Aaron Polster dismissed Plaintiff's claims pertaining to the length of his sentence or incarceration pursuant to 28 U.S.C. §1915(e). (Doc. 5). Additionally, Judge Polster dismissed Plaintiff's Eighth Amendment claims against ODRC Director Ernie Moore, OAPA Deputy Director Harry Hageman, and OAPA Chief Cynthia Mausser finding that no facts in the pleading reasonably associated these parties with any of the claims set forth by the Plaintiff. The Court then left the case to proceed "solely on Plaintiff's Eighth Amendment claim against MANCI Warden Keith Smith concerning the conditions of confinement." (Doc. 5).

## II. Defendant's Motion to Dismiss

Defendant filed its Motion to Dismiss on April 8, 2011. (Doc. 30). Defendant has indicated that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. In so arguing, Defendant relies heavily upon the documentation attached to Plaintiff's Complaint. However, Defendant has made no effort in its Motion to Dismiss to indicate what basis for dismissal applies to Plaintiff's claim. The Sixth Circuit has held that failure to exhaust administrative remedies is "not a jurisdictional bar, but rather [exhaustion is] a condition precedent to an action in federal court." *McKnight v. Gates*, 282 Fed. App'x 394, 397 n. 2 (6th Cir. 2008) (citing *Zipes v. Trans World Airlines*, 455 U.S. 385, 395-98 (1982)). Therefore, if a Rule 12(b) motion was proper in this instance, Defendant's failure to exhaust argument would be considered under Rule 12(b)(6). *See McKnight*, 282 Fed. App'x at 397 n. 2 (6th Cir. 2008).

However, a Rule 12(b)(6) motion is not proper. In the instant case, Defendant filed an answer before it filed its motion to dismiss. Indeed, the motion to dismiss was filed six months after the filing of the answer. A motion to dismiss filed under Rule 12(b)(6), subsequent to the filing of an answer, cannot "properly lie because Rule 12(b) requires that '[a] motion making any of these defenses shall be made before pleading.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting FED.R.CIV.P. 12(b)). However, Rule 12(h)(2) of the Federal Rules of Civil Procedure provides that a Rule 12(b)(6) defense may be raised by a motion for judgment on the pleadings pursuant to Rule 12(c). Accordingly, courts will generally construe a post-answer Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings. *See Clarke v. Howard*, No. 405CV1977, 2006 WL 3700238 (N.D. Ohio Dec. 8, 2006). *See also Scheid*, 859 F.2d at 436 ("[A Rule 12(b)(6)] motion may be properly considered as one for judgment on the pleadings under Fed.R.Civ.P. 12(c), and evaluated, nonetheless, under the standards for dismissal under Rule 12(b)(6)."). Therefore, the Court will consider the instant Rule 12(b)(6) motion as one for judgment on the pleadings and evaluate it pursuant to the standard for dismissal under Rule 12(b)(6). *Id*.

In determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the Plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007). If an allegation in the complaint is capable of more than one inference, the court must construe it in the plaintiff's favor. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th

Cir. 1995). Furthermore, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. However, a plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Although a plaintiff's complaint need not contain "detailed" factual allegation, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papason v. Allain, 478 U.S. 265, 286 (1986). Moreover, pro se pleadings are, generally, liberally construed. Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam).

The Sixth Circuit has held that a court may consider exhibits attached to the complaint, in addition to the allegations in the complaint itself, without converting the motion to dismiss to a motion for summary judgment. FED.R.CIV.P. 10(c); Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997).

### III. ANALYSIS

Defendant has moved to dismiss Plaintiff's Complaint for failure to exhaust administrative remedies before filing the instant suit as required by the Prison Litigation Reform Act of 1995 (PLRA). 42 U.S.C. §1997(e)(a) (2011). Although Plaintiff properly described the grievance process which he completed prior to filing his complaint, his grievances are insufficient for his complaint to proceed against the warden. "Proper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Moreover, these procedural rules are determined by "the prison's requirements, and not the PLRA..." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Ohio's Administrative Code lays out the inmate grievance procedure. *See* Ohio Admin. Code 5120-9-31 (2011). Relevant to the instant case is Section M of Ohio Administrative Code 5120-9-31 which states:

> [g]rievances against the warden or inspector of institutional services must be filed directly to the office of the chief inspector within thirty calendar days of the event giving rise to the complaint. Such grievances must show that the warden or inspector of institutional services was *personally or knowingly* involved in a violation of law, rule or policy, or *personally and knowingly* approved or condoned such a violation.

*Id*. (emphasis added). Accordingly, Plaintiff was required to file his grievance against the warden with the office of the chief inspector within thirty calendar days and was required to show in his grievance that the "the warden or inspector of institutional services was personally or knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." *Id*.

Plaintiff has attached all of his grievances to his Complaint. (Compl. at 10-13). A review of these grievances reveals Plaintiff mentions the warden's name in introducing the claim, but fails to provide any facts or details as to how the Warden was "personally or knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Ohio Admin. Code 5120-9-31

6

(2011). Moreover, Plaintiff fails to connect the warden to the allegations of unsanitary prison conditions. There is simply nothing in Plaintiff's grievances which might constitute the showing required by Ohio Administrative Code 5120-9-31. *See Morgan v. Beightler*, No. 109CV2190, 2011 WL 2111082 (N.D. Ohio May 26, 2011) (dismissing pro se plaintiff's complaint where the plaintiff's grievances neither showed how the warden was personally or knowingly involved in the alleged act, nor how she personally approved or condoned such acts); *Tate v. Williams*, No. 206CV47, 2007 WL 781657 (S.D. Ohio Mar. 12, 2007) (dismissing claim in part because plaintiff failed to identify the warden and how he was "personally knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation"). Additionally, Plaintiff's first of the two grievances was filed with the inspector of institutional services at MANCI rather than the office of the chief inspector contrary to the requirement of Section M of Ohio Administrative Code 5120-9-31. Plaintiff's failure to comply with the inmate grievance procedures constitutes a failure to properly exhaust his remedies as required by the PLRA.

Plaintiff argues that Judge Polster, in screening the Complaint, already determined that "Harris [exhausted] his administrative remedies before the filing of his complaint against Warden Smith." (Doc. 34). However, a review of Judge Polster's screening shows that Plaintiff's argument is misguided. During the screening process, the Court did not address exhaustion. *See generally* (Doc. 5). Moreover, the Sixth Circuit has stated that claims that survive the initial screening under 28 U.S.C. § 1915A may be the proper subject of a later motion to dismiss under Fed.R.Civ.P.

12(b)(6). See *Dickerson v. Parnell*, 101 Fed. App'x. 587, 588 (6th Cir. 2004); *Naturalite v. Hood*, 98 Fed. App'x. 401, 402 (6th Cir. 2004); *Harrington v. Painter*, 92 Fed. App'x. 126, 128 (6th Cir. 2003). Thus, this Court may address exhaustion presently.

Additionally, Plaintiff contends that his complaint should not be dismissed for failure to exhaust his administrative remedies because he filed grievances against the warden to both the institutional inspector and to the office of the chief inspector. (Doc. 34). However, Defendant does not argue that Plaintiff did not file a grievance against the warden with the office of the chief inspector. Instead, Defendant contends that Plaintiff failed to show that the Warden was "personally or knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation," and therefore failed to exhaust his administrative remedies. Ohio Admin. Code 5120-9-31 (2011). Since Plaintiff's argument is erroneous, the Court's analysis remains unchanged.

It is well established in the Sixth Circuit that a plaintiff's complaint must be dismissed where he files his "federal complaint before allowing the administrative process to be completed." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Moreover, it is clear from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. Cf. *Jones*, 549 U.S 199 (2007) (acknowledging that a claim may be dismissed under FED.R.CIV.P. 12(b)(6) if an affirmative defense appears on the face of the complaint). Therefore, Plaintiff's Complaint must be dismissed for failure to exhaust his administrative remedies.

8

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED. Furthermore, all of Plaintiff's claims are hereby dismissed.

IT IS SO ORDERED.

<u>June 10, 2011</u>    <u>  /s/ Kenneth S. McHargh         </u>
  Kenneth S. McHargh
  United States Magistrate Judge